IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMPOWER CLINIC SERVICES, L.L.C.,

    Plaintiff,

v.

INOVALON, INC.,

    Defendant.

Civil Action No. 24-1322-RGA

## MEMORANDUM OPINION

John A. Sensing, Bindu A. Palapura, Andrew M. Moshos, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Geoff A. Gannaway, Kaitie Sorenson, BECK REDDEN LLP, Houston, TX,

    Attorneys for Plaintiff.

Ryan D. Stottmann, Alexandra M. Cumings, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE,

    Attorneys for Defendant.

September 9, 2025

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Inovalon's Motion to Compel Arbitration and to Dismiss or Stay Proceedings. (D.I. 10). I have considered the parties' briefing. (D.I. 11, 23, 26). For the reasons that follow, the motion is GRANTED and the case is STAYED pending arbitration.

## I.   BACKGROUND

Empower and Inovalon entered into a Master Services Agreement ("MSA") for the "implementation and provision of pharmaceutical order management software" in October 2023. (D.I. 23 at 3). The MSA provides a "three-step escalated dispute resolution process" for which the final step is decision by arbitration. (D.I. 11 at 5). The MSA's "Arbitration" section reads, in relevant part:

> If [a dispute in connection with this Agreement and the Services provided hereunder] cannot be resolved by way of direct negotiation or mediation . . ., the dispute will be decided by arbitration upon initiation by either party, which will be conducted by a single arbitrator and, except as otherwise expressly provided herein, in accordance with the complex commercial dispute rules of the American Arbitration Association ["AAA"], unless the parties mutually agree that another arbitration provider and its binding arbitration rules will be used in this case. The arbitration will be conducted in Delaware, unless the disputing parties mutually agree otherwise. . . . This agreement to arbitrate will be specifically enforceable under the Delaware Uniform Arbitration Act. The arbitrator's decision will be final, and judgment, including specific enforcement of the decision, may be entered upon the decision in any court of competent jurisdiction in accordance with applicable law. The amount of any dollar award, including applicable fees and costs of the prevailing party, will be paid in cash by the party not so prevailing to the prevailing party . . . . In the event that payment is not made within the time period provided herein, the prevailing party will have the right to commence an action, at law or in equity, in any state or federal court in the State of Delaware to have the decision of the arbitrator enforced.

(D.I. 15, Ex. B, § 6.3). The MSA also includes "Equitable Relief" and "Governing Law and Venue" sections, which read, respectively:

> To the extent that the arbitrator acting under the applicable rules of the American Arbitration Association (or other agreed upon provider) and pursuant to Delaware law does not have legal jurisdiction and authority to impose injunctive or other

2

> equitable relief, a party seeking the same will be entitled to pursue the same through court litigation. Such action may be pursued during, after or in lieu of arbitration. Any such action will be pursued exclusively in the state or federal courts with requisite jurisdiction located in Delaware.
>
> . . .
>
> This Agreement will be governed by and construed in accordance with the laws of the State of Delaware, other than its conflicts of laws provisions. The Parties irrevocably and unconditionally consent to venue in Delaware (and hereby waive any claims of forum non conveniens with respect to such venue) and to the exclusive jurisdiction of competent Delaware state courts or federal courts in Delaware for all litigation which may be brought with respect to the terms of, and the transactions and relationships contemplated by, this Agreement.

(*Id.* §§ 6.5, 9.11). The parties do not dispute that the first two steps of the dispute resolution process have occurred (D.I. 11 at 5–6; *see generally* D.I. 23), so their focus is on the arbitration clause.

## II. LEGAL STANDARD

To succeed on a motion to compel arbitration, a party must show that (1) a valid agreement to arbitrate exists and (2) the dispute at issue falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Courts apply a presumption in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007) (noting the Federal Arbitration Act embodies a strong federal policy favoring arbitration); *Trippe*, 401 F.3d at 532;.[1]

Arbitration agreements may assign to the arbitrator the determination of whether a dispute is arbitrable at all. As the Supreme Court explained in *Henry Schein, Inc. v. Archer & White Sales, Inc.*:

---

[1] Inovalon suggests that the Delaware Uniform Arbitration Act, rather than the Federal Arbitration Act, governs this dispute, but also that "Delaware law mirrors federal law" and would therefore compel the same outcome. (D.I. 11 at 8) (quoting *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006)). Empower does not address this point. (*See generally* D.I. 23).

3

> Under the [Federal Arbitration] Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. . . . [P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.

586 U.S. 63, 67 (2019) (cleaned up). If there is "clear and unmistakable" evidence that the parties intended to delegate arbitrability, then "a court may not decide the arbitrability issue" and must instead let the arbitrator decide. *Id.* at 69 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 140 (3d Cir. 2022) ("[Q]uestions about the 'making of the agreement to arbitrate' are for courts to decide unless the parties have clearly and unmistakably referred those issues to arbitration in a written contract whose formation is not in issue.") (quoting *MZM Constr. Co., Inc. v. N.J. Bldg. Labs. Statewide Benefit Funds*, 974 F.3d 386, 392 (3d Cir. 2020)). "[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). In determining who is bound by an arbitration agreement, "background principles of state contract law" apply. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

### III.   DISCUSSION

I conclude that I am the appropriate decisionmaker regarding whether this dispute is arbitrable. I also conclude that the arbitration clause is valid and requires arbitration.

#### A. Arbitrability Is for the Court to Decide.

Generally, courts decide gateway questions of arbitrability. *Zirpoli*, 48 F.4th at 140. The exception is that courts must leave questions of arbitrability to the arbitrator when evidence of the parties' intent to delegate such questions to the arbitrator is clear and unmistakable. *Id.* Incorporation of the AAA rules, as in the MSA, generally constitutes clear and unmistakable evidence, since the AAA rules provide that "[t]he arbitrator shall have the power to rule on his or

her own jurisdiction, including any objections with respect to . . . the arbitrability of any claim or counterclaim." *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (quoting American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a)). "That provision 'is about as "clear and unmistakable" as language can get.'" *Id.* (quoting *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)).

Delaware contract law imposes an exception to the exception, however, when an agreement, while incorporating the AAA rules, "does not generally refer all controversies to arbitration," such as when it "expressly authoriz[es a signatory] to obtain injunctive relief and specific performance in the courts." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006). In *Willie Gary*, the Delaware Supreme Court adopted the "clear and unmistakable evidence" exception but held it did not apply because the arbitration agreement at issue provided that signatories were entitled to seek injunctive relief in addition to arbitration. *Id.*

But there is an exception to the exception to the exception. Delaware courts have held that *Willie Gary* does not apply, and the "clear and unmistakable evidence" exception does, when an arbitration clause includes "a narrowly tailored exception" but "otherwise submit[s] all disputes to arbitration. . . ." *McLaughlin v. McCann*, 942 A.2d 616, 625 (Del. Ch. 2008) (citing *BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 26–27 (Del. Ch. 2007)). *McLaughlin* held that *Willie Gary* did not apply to an arbitration agreement that included an "arguable exception for usury claims. . . ." *McLaughlin*, 942 A.2d at 626. *BAYPO* held that *Willie Gary* did not apply to an arbitration agreement that provided for injunctive relief but explicitly limited such relief to that necessary "to protect [the parties'] interests during the pendency of the arbitration process." *BAYPO*, 940 A.2d at 27. *See also W. IP Commc'ns, Inc. v. Xactly Corp.*, 2014 WL 3032270, at *9 (Del. Super. Ct. June 25, 2014) (applying *McLaughlin* and *BAYPO* and concluding that

exceptions in an arbitration agreement for "Actions for Preliminary Relief" and "Collective Actions" did not preclude a finding of clear and unmistakable evidence of intent to delegate arbitrability).

The question, therefore, is whether this case falls closer to *McLaughlin* and *BAYPO* or to *Willie Gary*. I conclude that it falls closer to *Willie Gary*. Section 6.5 provides that the parties to the agreement may pursue "injunctive or other equitable relief . . . in lieu of arbitration" whenever "the arbitrator . . . does not have legal jurisdiction and authority to impose [such] relief." (D.I. 15, Ex. B, § 6.5). The arbitration agreement in *Willie Gary* similarly provided, "the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement. . . ." *Willie Gary*, 906 A.2d at 79. The only relevant difference between the two provisions is that under the MSA, equitable relief in the courts is reserved for when the arbitrator lacks authority to impose it themselves; on the other hand, the provision's "in lieu of arbitration" language suggests that equitable relief in court exists in addition to arbitration. Perhaps the most important similarity between this case and *Willie Gary*, then, is that in this case, as in *Willie Gary*, the arbitration agreement does not "state expressly that the arbitrator[] shall be authorized to grant temporary or permanent equitable relief such as specific performance." *Medicis Pharm. Corp. v. Anacor Pharms., Inc.*, 2013 WL 4509652, at *11 (Del. Ch. Aug. 12, 2013). At least two courts have distinguished *Willie Gary* on this basis, despite the fact that the AAA rules provide that arbitrators have the authority to grant equitable relief. *See Medicis*, 2013 WL 4509652, at *11; *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1121 (Del. Ch. 2010). Considering the above, I conclude that the parties did not clearly and unmistakably delegate questions of arbitrability to the arbitrator.

### B. The Court Must Compel Arbitration.

Because the parties have not clearly and unmistakably delegated questions of arbitrability to the arbitrator, I must determine whether the arbitration agreement requires arbitration in this case. I conclude that it does.

The plain language of the agreement provides that disputes be resolved by the arbitrator. (D.I. 15, Ex. B, § 6.3) ("If the dispute cannot be resolved . . ., the dispute will be decided by arbitration. . . ."). None of Empower's arguments persuade me to disregard the agreement's plain language.

#### 1. The Forum Selection Clause Does Not Waive the Right to Arbitration.

Empower first argues that the Governing Law and Venue section waives arbitration. (D.I. 23 at 4–11). I disagree. Again, the clause reads:

> This Agreement will be governed by and construed in accordance with the laws of the State of Delaware, other than its conflicts of laws provisions. The Parties irrevocably and unconditionally consent to venue in Delaware (and hereby waive any claims of forum non conveniens with respect to such venue) and to the exclusive jurisdiction of competent Delaware state courts or federal courts in Delaware for all litigation which may be brought with respect to the terms of, and the transactions and relationships contemplated by, this Agreement.

(D.I. 15, Ex. B, § 9.11).

Empower argues that the forum selection clause must waive arbitration because of its use of language such as "exclusive," "irrevocable," and "unconditional." (D.I. 23 at 4–11). In support of its argument, Empower primarily relies on *Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 477 (D. Del. 1998), in which the court held that a forum selection clause stating "'any interpretation or adjudication' related to the agreement is to take place 'in a court located in the State of Delaware United States of America'" necessarily "prevent[ed] a party from seeking to resolve disputes arising under the agreement in any forum other than a Delaware court[,]" including arbitration.

There are at least three problems with this argument.

First, *American Life* is distinguishable. Importantly, that case considered two separate agreements—an earlier agreement with an arbitration clause, and a later agreement without one—and therefore had no occasion to consider how an arbitration clause and a forum selection clause in the same agreement might interact. *Id.* at 470–77. Further, unlike the forum-selecting agreement in that case, the agreement here does not expressly require that "any interpretation or adjudication" of the agreement take place in court. *Id.* The best Empower can argue is that the "exclusive" term in the MSA's forum selection clause must favor court adjudication to the detriment of other venues (D.I. 23 at 8), but that ignores another difference between this case and *American Life*—unlike in that case, the agreement here specifies that its forum selection clause only applies to "litigation which *may* be brought . . . ." (D.I. 15, Ex. B, § 9.11) (emphasis added). As I explain below, not all disputes arising under the MSA may be brought in litigation. As to those disputes for which the forum selection clause does apply, however, its "exclusive" term (indeed, all its terms) are given full effect.

Second, Empower's interpretation reads the arbitration clause out of the contract. Delaware law requires that a contract be read "as a whole . . . , so as not to render any part of the contract mere surplusage." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quotation omitted). In arguing that the forum selection clause waives any right to arbitration, Empower renders the arbitration clause surplusage and violates this principle. The better approach is to read the two clauses in harmony. As Inovalon notes, "The MSA recognizes . . . that the parties may need to litigate certain matters that fall outside the broad arbitration provision, including to enforce an arbitration award or to pursue 'injunctive or other equitable relief' to the extent the arbitrator lacks legal jurisdiction or authority to issue it." (D.I. 26 at 3) (citing D.I. 15, Ex. A,

§§ 6.3, 6.5).[2] Empower responds that Section 6.3 already accounts for the enforcement of arbitration agreements (D.I. 23 at 9),[3] but it does not respond to Inovalon's argument that the agreement authorizes legal action where the arbitrator lacks authority to pursue equitable relief. Between the two interpretations of the agreement, Inovalon's clearly does a better job of honoring both provisions.

Third, it is a "basic principle that specific language controls over general language in a contract." *TMIP Participants LLC v. DSW Grp. Holdings LLC*, 2016 WL 490257, at *12 (Del. Ch. Feb. 4, 2016). The MSA outlines a detailed, three-step procedure for resolving disputes. It states the rules governing arbitration, as well as where arbitration is to occur, the deadline by which the arbitrator is to render a decision, the manner in which fees to the arbitrator and AAA are to be allocated between the parties, and the window in which the non-prevailing party must pay the prevailing party following arbitration. (D.I. 15, Ex. B, § 6.1–6.5). The MSA's dispute resolution language is more specific than its forum selection language, and the dispute resolution language should therefore govern, to the extent the two sections conflict.

---

[2] For its part, Empower argues that Inovalon's interpretation would read the forum selection clause's "irrevocable," "unconditional," and "exclusive" language out of the agreement and therefore violate the same anti-surplusage principle. (D.I. 23 at 7–8). But Inovalon's reading does no such thing. The thrust of Inovalon's argument is not that the forum selection clause is conditional, or non-exclusive—it is that the forum selection clause does not apply to every dispute arising under the MSA. That is perfectly consistent with the language of the forum selection clause.

[3] Empower cites language in the agreement providing that the prevailing party in an arbitration dispute can enforce that decision in Texas. (D.I. 23 at 9) (citing D.I. 23-1, Ex. A, § 6.3, which is the same as D.I. 15, Ex. B, § 6.3). It seems Empower misstates the provision, which refers to Delaware, not Texas, but that has no bearing on Empower's argument.

### 2. Empower's Other Arguments Are Unavailing.

Empower raises two other arguments: first, that its lawsuit, as the "first-filed" action, must take precedence over arbitration; second, that the arbitration provision is not valid because "there was no meeting of the minds on the forum for dispute resolution." (D.I. 23 at 11–13, 16–19).

Empower's first argument is a non-starter. The "first-filed" doctrine applies to parallel court actions, *see McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970), not to disputes over whether to arbitrate.

Empower's second argument fares no better, because it is premised on the view that "[t]he MSA contains two clauses calling for different dispute resolution" (D.I. 23 at 17), and that "[i]f the Court does not determine that the forum-selection clause prevails, then the provisions conflict. . . ." (*Id.*). As I explained above, the two provisions can be reconciled.

## IV. CONCLUSION

An appropriate order will issue.